IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAJED OWENAH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| AKAL SECURITY, INC., a foreign corporation, | ) | |
| individually and by and through its agents, servants | ) | |
| and/or employees, GERALD HIBBLER, | ) | |
| individually and as agent, servant and/or employee | ) | |
| of Akal Security, Inc., UNKNOWN SECURITY | ) | |
| GUARD, and ANY AND ALL UNKNOWN | ) | |
| OWNERS and NON-RECORD CLAIMANTS, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT AT LAW

NOW COMES the Plaintiff, MAJED OWENAH, by and through his attorney, James A. Karamanis of Barney & Karamanis, LLP, and complaining against the Defendants, THE UNITED STATES OF AMERICA, AKAL SECURITY, INC., a foreign corporation, individually and by and through its agents, servants and/or employees, GERALD HIBBLER, individually and as agent, servant and/or employee of The United States of America and Akal Security, Inc., UNKNOWN SECURITY GUARD, and ANY AND ALL UNKNOWN OWNERS and NON-RECORD CLAIMANTS, and each of them, states as follows:

## JURISDICTION

1.     The jurisdiction of this Court is invoked pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§1346(b), 2401(b), 2671, *et seq.*

## PARTIES

1.     That at all times relevant herein, Plaintiff was and is a resident of the City of Chicago, County of Cook, and State of Illinois.

2.     That Defendant, the United States of America, is the proper Defendant pursuant to Federal Tort Claims Act (FTCA), 28 U.S.C. §§1346(b), 2401(b), 2671, *et seq*. (hereinafter "United States").

3.     That Defendant, Akal Security, Inc. (hereinafter "Akal") is a foreign corporation existing under and by virtue of the laws of the State of Illinois.

4.     That on information and belief, Defendant Gerald Hibbler was a resident of the State of Illinois and was employed as a security officer by Defendant Akal (hereinafter "Hibbler").

5.     That at all times relevant herein, Unknown Security Guard was employed as a Court Security Officer by Akal.

## FACTS COMMON TO ALL COUNTS

6.     That on November 10, 2013, Plaintiff filed his Claim for Damage, Injury or Death with the General Services Administration of the United States (hereinafter the "Federal Tort Claim").

7.     That the General Services Administration transferred administration of Plaintiff's Federal Tort Claim to the U.S. Department of Justice/U.S. Marshals Service.

8.     That on July 2, 2013, Plaintiff's Federal Tort Claim was denied by the U.S. Department of Justice/U.S. Marshals Service.  A copy of the denial letter is attached hereto as Exhibit "A" and made a part hereof.

2

9.     That at all times relevant herein, Plaintiff was in the employ of Alpha Baking Company as a delivery person, and was making a delivery to the Dirksen Federal Building at the time of the subject occurrence.

10.     That the Everett McKinley Dirksen United States Courthouse, commonly referred to as the Dirksen Federal Building, is a federal property located at 219 S. Dearborn, Chicago, County of Cook, State of Illinois (hereinafter "Dirksen Federal Building").

11.     That at all times relevant herein, Defendant United States owned the Dirksen Federal Building, and was responsible for its maintenance, upkeep, and security.

12.     That at all times relevant herein, Defendant Akal was in the business of providing court security officer ("CSO") services to federal buildings.

13.     That at all times relevant herein, Defendant Akal was responsible for providing security at the Dirksen Federal Building pursuant to a contractual relationship between Akal and the United States.

14.     That at all times relevant herein, Defendant Akal was acting as agent, servant and/or employee of the United States.

15.     That at all times relevant herein, there existed a certain ramp located on the southeast side of the Dirksen Federal Building on Jackson Boulevard, City of Chicago, State of Illinois, which was designed for use by delivery drivers and other vehicle services (hereinafter the "Ramp").

16.     That at all times relevant herein, Defendant Akal stationed security officers in a guard booth at the top of the Ramp, who were responsible for directing vehicle and pedestrian traffic at the Dirksen Federal Building.

3

17.     That at all times relevant herein, Defendant Hibbler was assigned to the guard booth at the top of the Ramp.

18.     That at all times relevant herein, Defendant Hibbler was acting in the scope of his employment with Akal.

19.     That at all times relevant herein, Defendant Hibbler was acting as an agent of the United States.

20.     That at all times relevant herein, Defendant Unknown Security Guard was assigned to the guard booth at the top of the Ramp.

21.     That at all times relevant herein, Unknown Security Guard was acting in the scope of his employment with Akal.

22.     That at all times relevant herein, Unknown Security Guard was acting as agent of the United States and Akal.

23.     That at all times relevant herein, Defendant Hibbler, as agent of Defendants United States and Akal, and Defendants United States and Akal, by and through their agents, including Defendant Hibbler, were responsible for the safety of those individuals lawfully on the property at the Dirksen Federal Building, including Plaintiff.

24.     That at all times relevant herein, Defendant Unknown Security Guard, as agent of Defendants United States and Akal, and Defendants United States and Akal, by and through their agents, including Defendant Unknown Security Guard, were responsible for the safety of those individuals lawfully on the property at the Dirksen Federal Building, including Plaintiff.

25.     That on January 13, 2012, as Plaintiff was making a delivery to the Dirksen Federal Building, Defendant Hibbler directed Plaintiff to proceed on foot down the Ramp, at which time

4

Plaintiff fell on an iced-over, slippery metal plate embedded in the pavement and became severely injured.

## COUNT I

### (Negligence – United States of America)

1-25.    Plaintiff repeats and realleges Paragraphs 1 through 25 of this Complaint as and for Paragraphs 1 through 25 of this Count I as if fully set forth herein.

26.    That on or about January 13, 2012, Defendant United States owned, controlled, maintained and possessed the property on which the Dirksen Federal Building is located, including the Ramp.

27.    That at said time and place, the Ramp was designed for use by vehicles, and was not designed to be used by pedestrians, including Plaintiff.

28.    That despite knowledge that the Ramp was not to be used by pedestrians, Defendant United States nevertheless allowed and directed pedestrians to use the Ramp.

29.    That at said time and place, and for a long time prior thereto, Defendant United States held out that the aforesaid Ramp was safe for lawful use by the Plaintiff and individuals who were pedestrians, delivery personnel, or otherwise lawfully on the premises at the Dirksen Federal Building.

30.    That on or about January 13, 2012, and for a long time prior thereto, Defendant United States failed to exercise ordinary care in keeping and maintaining said Ramp in a reasonable and safe condition for use by those individuals lawfully on the premises, including Plaintiff, at the Dirksen Federal Building.

31.     That on or about January 13, 2012, and for a long time prior thereto, Defendant United States failed to ensure that the Ramp was free of ice and snow which would pose a danger to individuals lawfully on the premises at the Dirksen Federal Building.

32.     That at said time and place, and for a long time prior thereto, said Ramp was in a neglected and hazardous condition.

33.     That on or about January 13, 2012, Plaintiff, Majed Owenah, was a pedestrian on the Ramp, acting on instructions given to him by Defendant Hibbler to proceed on foot down the Ramp in order to make a delivery.

34.     That at the aforesaid place and time, Plaintiff fell due to the icy, slippery, and untended condition of the Ramp.

35.     That at the aforesaid time and place, the Defendant, United States, individually and by and through its agents, servants and employees, was then and there guilty of one or more of the following wrongful acts or omissions:

(a)     Directed Plaintiff to proceed down the Ramp when it knew or should have known that the Ramp was intended for vehicles only and was not designed to be utilized by pedestrians;

(b)     Directed Plaintiff to proceed down the Ramp when it knew or should have known that it was in an icy and hazardous condition and posed a threat of injury to anyone walking upon the Ramp, including Plaintiff;

(c)     Carelessly and negligently maintained, kept and controlled said Ramp, so that as a direct and proximate result thereof, Plaintiff was injured;

(d)     Carelessly and negligently permitted and allowed said Ramp to be and remain in a neglected and hazardous condition;

(e)     Carelessly and negligently permitted and allowed said Ramp to be and remain in a neglected and icy condition for use by those individuals walking upon or along said Ramp, although Defendant knew, or in the exercise of ordinary care reasonably should have known, of this condition;

6

(f)     Carelessly and negligently failed to inspect and remedy or otherwise place in a good and safe condition the said Ramp, although Defendant knew, or in the exercise or ordinary care ought to have known, that such failure was likely to result in injury to individuals, including Plaintiff, walking upon or along said Ramp;

(g)     Carelessly and negligently failed to warn the public, including Plaintiff of the dangerous and defective condition of said Ramp, although the Defendant knew, or in the exercise of ordinary care reasonably should have known, that such warning was reasonably necessary to prevent injury to members of the public and/or delivery personnel, including Plaintiff, walking on or along said Ramp;

(h)     Carelessly and negligently failed to place barriers, guards and/or signs surrounding the area around the defective and icy Ramp in order to prevent the Plaintiff and all other pedestrians and members of the public from using said area;

(i)     Was otherwise careless and negligent.

36.     That as a direct and proximate result of one or more of the aforesaid wrongful acts of Defendant, United States, Plaintiff was then and there injured, both internally and externally, and suffered a severe shock to Plaintiff's nervous system; he sustained a torn meniscus in his knee requiring surgery, contusions and lacerations to his body, as well as other injuries; and he became sick and disabled and suffered; and will in the future suffer great pain and discomfort and physical impairment, all of which injuries are permanent; and he has lost and will in the future lose other great gains which he would have made and acquired; and he has been and will be kept from attending to his ordinary affairs and duties, and has become liable for great sums of money for the cost of medical care and attention.

WHEREFORE Plaintiff, MAJED OWENAH, by and through his attorney, James A. Karamanis of Barney & Karamanis, LLP, prays that this Honorable Court enter judgment in his favor and against the Defendant, UNITED STATES OF AMERICA, in excess of

7

SEVENTY-FIVE THOUSAND AND NO/100 ($75,000.00) DOLLARS and for such other relief for Plaintiff as this Court deems just and equitable.

## COUNT II

**(Negligence – Akal Security, Inc., individually and by and through its agents, servants and/or employees)**

1-36.　Plaintiff repeats and realleges Paragraphs 1 through 36 of Count I as and for Paragraphs 1 through 36 of this Count II as if fully set forth herein.

37.　That on or about January 13, 2012, Defendant Akal was in the business of providing Court Security Officers to federal buildings, including but not limited to the federal courthouse known as the Dirksen Federal Building located in the City of Chicago, County of Cook, State of Illinois.

38.　That on or about January 13, 2012, Defendant Akal was engaged to provide a Court Security Officer at the guard booth at the top of the Ramp.

39.　That at said time and place, the Ramp was designed for use by vehicles, and was not designed to be used by pedestrians, including Plaintiff.

40.　That despite knowledge that the Ramp was not to be used by pedestrians, Defendant United States nevertheless allowed and directed pedestrians to use the Ramp.

41.　That at said time and place, and for a long time prior thereto, Defendant Akal, as agent, servant and/or employee of the United States, held out that the aforesaid Ramp was safe for lawful use by the Plaintiff and individuals who were pedestrians, delivery personnel, or otherwise lawfully on the premises at the Dirksen Federal Building.

42.　That on or about January 13, 2012, and for a long time prior thereto, Defendant Akal failed to exercise ordinary care in keeping and maintaining said Ramp in a reasonable and

safe condition for use by those individuals lawfully on the premises, including Plaintiff, at the Dirksen Federal Building.

43. That on or about January 13, 2012, and for a long time prior thereto, Defendant Akal failed to ensure that the Ramp was free of ice and snow which would pose a danger to individuals lawfully on the premises at the Dirksen Federal Building.

44. That at said time and place, and for a long time prior thereto, said Ramp was in a neglected and hazardous condition.

45. That on or about January 13, 2012, Plaintiff, Majed Owenah, was a pedestrian on the Ramp, acting on instructions given to him by Akal's agent, Defendant Hibbler, to proceed on foot down the Ramp in order to make a delivery.

46. That at the aforesaid place and time, Plaintiff fell due to the icy, slippery, and untended condition of the Ramp.

47. That at the aforesaid time and place, the Defendant, Akal, individually and by and through its agents, servants and employees, was then and there guilty of one or more of the following wrongful acts or omissions:

(a) Directed Plaintiff to proceed down the Ramp when it knew or should have known that the Ramp was intended for vehicles only and was not designed to be utilized by pedestrians;

(b) Directed Plaintiff to proceed down the Ramp when it knew or should have known that it was in an icy and hazardous condition and posed a threat of injury to anyone walking upon the Ramp, including Plaintiff;

(c) Carelessly and negligently maintained, kept and controlled said Ramp, so that as a direct and proximate result thereof, Plaintiff was injured;

(d) Carelessly and negligently permitted and allowed said Ramp to be and remain in a neglected and hazardous condition;

9

(e)     Carelessly and negligently permitted and allowed said Ramp to be and remain in a neglected and icy condition for use by those individuals walking upon or along said Ramp, although Defendant knew, or in the exercise of ordinary care reasonably should have known, of this condition;

(f)     Carelessly and negligently failed to inspect and remedy or otherwise place in a good and safe condition the said Ramp, although Defendant knew, or in the exercise or ordinary care ought to have known, that such failure was likely to result in injury to individuals, including Plaintiff, walking upon or along said Ramp;

(g)     Carelessly and negligently failed to notify officials and/or maintenance personnel at the Dirksen Federal Building that the Ramp was in an icy, slippery and hazardous condition;

(h)     Carelessly and negligently failed to warn the public, including Plaintiff of the dangerous and defective condition of said Ramp, although the Defendant knew, or in the exercise of ordinary care reasonably should have known, that such warning was reasonably necessary to prevent injury to members of the public and/or delivery personnel, including Plaintiff, walking on or along said Ramp;

(i)     Carelessly and negligently failed to place barriers, guards and/or signs surrounding the area around the defective and icy Ramp in order to prevent the Plaintiff and all other pedestrians and members of the public from using said area;

(j)     Was otherwise careless and negligent.

48.     That as a direct and proximate result of one or more of the aforesaid wrongful acts of Defendant, Akal, Plaintiff was then and there injured, both internally and externally, and suffered a severe shock to Plaintiff's nervous system; he sustained a torn meniscus in his knee requiring surgery, contusions and lacerations to his body, as well as other injuries; and he became sick and disabled and suffered; and will in the future suffer great pain and discomfort and physical impairment, all of which injuries are permanent; and he has lost and will in the future lose other great gains which he would have made and acquired; and he has been and will be kept from attending to his ordinary affairs and duties, and has become liable for great sums of money for the cost of medical care and attention.

10

WHEREFORE Plaintiff, MAJED OWENAH, by and through his attorney, James A. Karamanis of Barney & Karamanis, LLP, prays that this Honorable Court enter judgment in his favor and against the Defendant, AKAL SECURITY, INC., a foreign corporation, in excess of SEVENTY-FIVE THOUSAND AND NO/100 ($75,000.00) DOLLARS and for such other relief for Plaintiff as this Court deems just and equitable.

**COUNT III**

**(Negligence – Gerald Hibbler, individually and as agent, servant and/or employee of Akal Security, Inc.)**

1-48.    Plaintiff repeats and realleges Paragraphs 1 through 48 of Count II as and for Paragraphs 1 through 48 of this Count III as if fully set forth herein.

49.    That on or about January 13, 2012, Defendant Hibbler, individually and by and through his agent, Akal, was in the business of providing Court Security Officer services to federal buildings, including but not limited to the federal courthouse known as the Dirksen Federal Building located in the City of Chicago, County of Cook, State of Illinois.

50.    That on or about January 13, 2012, Defendant Hibbler was engaged to serve as Court Security Officer at the guard booth at the top of the Ramp on the east side of the Dirksen Federal Building on Jackson Boulevard.

51.    That at said time and place, the Ramp was designed for use by vehicles only, and was not designed to be used by pedestrians, including Plaintiff.

52.    That despite knowledge that the Ramp was not to be used by pedestrians, Defendant United States nevertheless allowed and directed pedestrians to use the Ramp.

53.     That at said time and place, and for a long time prior thereto, Defendant Hibbler was responsible for ensuring the safety of pedestrians and individuals utilizing the sidewalks, walkways and Ramp at the Dirksen Federal Building.

54.     That at said time and place, and for a long time prior thereto, Defendant Hibbler was responsible for ensuring that the aforesaid Ramp was safe for lawful use by the Plaintiff, members of the public, and/or individuals making deliveries to the Dirksen Federal Building.

55.     That on or about January 13, 2012, and for a long time prior thereto, Defendant Hibbler failed to exercise ordinary care in keeping and maintaining said Ramp in a reasonable and safe condition for use by those individuals lawfully on the premises, including Plaintiff, at the Dirksen Federal Building.

56.     That on or about January 13, 2012, and for a long time prior thereto, Defendant Hibbler failed to ensure that the Ramp was free of ice and snow which would pose a danger to individuals lawfully on the premises at the Dirksen Federal Building.

57.     That at said time and place, and for a long time prior thereto, said Ramp was in a neglected and hazardous condition.

58.     That on or about January 13, 2012, Plaintiff, Majed Owenah, was a pedestrian on the Ramp who was acting on instructions given to him by Defendant Hibbler, Defendant Akal's agent, servant and/or employee, to proceed on foot down the Ramp.

59.     That at the aforesaid place and time, Plaintiff fell due to the icy and untended condition of the Ramp.

12

60.     That at the aforesaid time and place, the Defendant, Hibbler, individually and as agent, servant and/or employee of Defendant Akal, was then and there guilty of one or more of the following wrongful acts or omissions:

(a)     Directed Plaintiff to proceed down the Ramp when it knew or should have known that the Ramp was intended for vehicles and was not designed to be utilized by pedestrians;

(b)     Directed Plaintiff to proceed down the Ramp when it knew or should have known that it was in an icy and hazardous condition and posed a threat of injury to anyone walking upon the Ramp, including Plaintiff;

(c)     Carelessly and negligently maintained, kept and controlled said Ramp, so that as a direct and proximate result thereof, Plaintiff was injured;

(d)     Carelessly and negligently permitted and allowed said Ramp to be and remain in a neglected and hazardous condition;

(e)     Carelessly and negligently permitted and allowed said Ramp to be and remain in a neglected and icy condition for use by those individuals walking upon or along said Ramp, although Defendant knew, or in the exercise of ordinary care reasonably should have known, of this condition;

(f)     Carelessly and negligently failed to inspect and remedy or otherwise place in a good and safe condition the said Ramp, although Defendant knew, or in the exercise or ordinary care ought to have known, that such failure was likely to result in injury to individuals, including Plaintiff, walking upon or along said Ramp;

(g)     Carelessly and negligently failed to notify officials and/or maintenance personnel at the Dirksen Federal Building that the Ramp was in an icy, slippery and hazardous condition;

(h)     Carelessly and negligently failed to warn the public, including Plaintiff of the dangerous and defective condition of said Ramp, although the Defendant knew, or in the exercise of ordinary care reasonably should have known, that such warning was reasonably necessary to prevent injury to members of the public and/or delivery personnel, including Plaintiff, walking on or along said Ramp;

(i)     Carelessly and negligently failed to place barriers, guards and/or signs surrounding the area around the defective and icy Ramp in order to prevent the Plaintiff and all other pedestrians and members of the public from using said area;

13

(j)     Was otherwise careless and negligent.

61.     That as a direct and proximate result of one or more of the aforesaid wrongful acts of Defendant, Hibbler, Plaintiff was then and there injured, both internally and externally, and suffered a severe shock to Plaintiff's nervous system; he sustained a torn meniscus in his knee requiring surgery, contusions and lacerations to his body, as well as other injuries; and he became sick and disabled and suffered; and will in the future suffer great pain and discomfort and physical impairment, all of which injuries are permanent; and he has lost and will in the future lose other great gains which he would have made and acquired; and he has been and will be kept from attending to his ordinary affairs and duties, and has become liable for great sums of money for the cost of medical care and attention.

WHEREFORE Plaintiff, MAJED OWENAH, by and through his attorney, James A. Karamanis of Barney & Karamanis, LLP, prays that this Honorable Court enter judgment in his favor and against the Defendant, GERALD HIBBLER, individually and as agent, servant and/or employee of Akal Security, Inc., in excess of SEVENTY-FIVE THOUSAND AND NO/100 ($75,000.00) DOLLARS and for such other relief for Plaintiff as this Court deems just and equitable.

## COUNT IV

**(Negligence – Unknown Security Guard, individually and as agent, servant and/or employee of Akal Security, Inc.)**

1-61.   Plaintiff repeats and realleges Paragraphs 1 through 61 of Count III as and for Paragraphs 1 through 61 of this Count IV as if fully set forth herein.

62.     That on or about January 13, 2012, Defendant Unknown Security Guard, individually and by and through his agent, Akal, was in the business of providing Court Security

14

Officer services to federal buildings, including but not limited to the federal courthouse known as the Dirksen Federal Building located in the City of Chicago, County of Cook, State of Illinois.

63.     That on or about January 13, 2012, Defendant Unknown Security Guard was engaged to serve as Court Security Officer at the guard booth at the top of the Ramp on the east side of the Dirksen Federal Building on Jackson Boulevard.

64.     That at said time and place, the Ramp was designed for use by vehicles only, and was not designed to be used by pedestrians, including Plaintiff.

65.     That despite knowledge that the Ramp was not to be used by pedestrians, Defendant United States nevertheless allowed and directed pedestrians to use the Ramp.

66.     That at said time and place, and for a long time prior thereto, Defendant Unknown Security Guard was responsible for ensuring the safety of pedestrians and individuals utilizing the sidewalks, walkways and Ramp at the Dirksen Federal Building.

67.     That at said time and place, and for a long time prior thereto, Defendant Unknown Security Guard was responsible for ensuring that the aforesaid Ramp was safe for lawful use by the Plaintiff, members of the public, and/or individuals making deliveries to the Dirksen Federal Building.

68.     That on or about January 13, 2012, and for a long time prior thereto, Defendant Unknown Security Guard failed to exercise ordinary care in keeping and maintaining said Ramp in a reasonable and safe condition for use by those individuals lawfully on the premises, including Plaintiff, at the Dirksen Federal Building.

15

69.     That on or about January 13, 2012, and for a long time prior thereto, Defendant Unknown Security Guard failed to ensure that the Ramp was free of ice and snow which would pose a danger to individuals lawfully on the premises at the Dirksen Federal Building.

70.     That at said time and place, and for a long time prior thereto, said Ramp was in a neglected and hazardous condition.

71.     That on or about January 13, 2012, Plaintiff, Majed Owenah, was a pedestrian on the Ramp who was acting on instructions given to him by Defendant Unknown Security Guard, Defendant Akal's agent, servant and/or employee, to proceed on foot down the Ramp in order to make a delivery.

72.     That at the aforesaid place and time, Plaintiff fell due to the icy and untended condition of the Ramp.

73.     That at the aforesaid time and place, the Defendant, Unknown Security Guard, individually and as agent, servant and/or employee of Defendant Akal, was then and there guilty of one or more of the following wrongful acts or omissions:

(a)     Directed Plaintiff to proceed down the Ramp when it knew or should have known that the Ramp was intended for vehicles and was not designed to be utilized by pedestrians;

(b)     Directed Plaintiff to proceed down the Ramp when it knew or should have known that it was in an icy and hazardous condition and posed a threat of injury to anyone walking upon the Ramp, including Plaintiff;

(c)     Carelessly and negligently maintained, kept and controlled said Ramp, so that as a direct and proximate result thereof, Plaintiff was injured;

(d)     Carelessly and negligently permitted and allowed said Ramp to be and remain in a neglected and hazardous condition;

(e)     Carelessly and negligently permitted and allowed said Ramp to be and remain in a neglected and icy condition for use by those individuals walking upon or along said

16

Ramp, although Defendant knew, or in the exercise of ordinary care reasonably should have known, of this condition;

(f)    Carelessly and negligently failed to inspect and remedy or otherwise place in a good and safe condition the said Ramp, although Defendant knew, or in the exercise or ordinary care ought to have known, that such failure was likely to result in injury to individuals, including Plaintiff, walking upon or along said Ramp;

(g)    Carelessly and negligently failed to notify officials and/or maintenance personnel at the Dirksen Federal Building that the Ramp was in an icy, slippery and hazardous condition;

(h)    Carelessly and negligently failed to warn the public, including Plaintiff of the dangerous and defective condition of said Ramp, although the Defendant knew, or in the exercise of ordinary care reasonably should have known, that such warning was reasonably necessary to prevent injury to members of the public and/or delivery personnel, including Plaintiff, walking on or along said Ramp;

(i)    Carelessly and negligently failed to place barriers, guards and/or signs surrounding the area around the defective and icy Ramp in order to prevent the Plaintiff and all other pedestrians and members of the public from using said area;

(j)    Was otherwise careless and negligent.

74.    That as a direct and proximate result of one or more of the aforesaid wrongful acts of Defendant, Unknown Security Guard, Plaintiff was then and there injured, both internally and externally, and suffered a severe shock to Plaintiff's nervous system; he sustained a torn meniscus in his knee requiring surgery, contusions and lacerations to his body, as well as other injuries; and he became sick and disabled and suffered; and will in the future suffer great pain and discomfort and physical impairment, all of which injuries are permanent; and he has lost and will in the future lose other great gains which he would have made and acquired; and he has been and will be kept from attending to his ordinary affairs and duties, and has become liable for great sums of money for the cost of medical care and attention.

17

WHEREFORE Plaintiff, MAJED OWENAH, by and through his attorney, James A. Karamanis of Barney & Karamanis, LLP, prays that this Honorable Court enter judgment in his favor and against the Defendant, UNKNOWN SECURITY GUARD, individually and as agent, servant and/or employee of Akal Security, Inc., in excess of SEVENTY-FIVE THOUSAND AND NO/100 ($75,000.00) DOLLARS and for such other relief for Plaintiff as this Court deems just and equitable.

Respectfully submitted,

**MAJED OWENAH**

By:  /s/ James A. Karamanis
      One of his Attorneys

James A. Karamanis (ARDC #6203479)
Shane Bradwell (ARDC #6308632)
Barney & Karamanis, LLP
Two Prudential Plaza
180 N. Stetson, Ste 3050
Chicago, Illinois 60601
Tel.:   312/553-5300

# EXHIBIT A



**U.S. Department of Justice**

United States Marshals Service

Office of General Counsel
2604 Jefferson Davis Highway

*Alexandria, VA 22301-1025*

JUL 2 – 2013

CERTIFIED MAIL # ———— 7012 0470 0000 5407 0386

Barney & Karamanis, LLP
Attn: James A. Karamanis, Esq.
Two Prudential Plaza
180 N. Stetson, Suite 3050
Chicago, Illinois 60601

**Re: Administrative Tort Claim o/b/o Majed Owenah**

Dear Mr. Karamanis:

This responds to the administrative tort claim filed with the General Services Administration (GSA), on behalf of your client, Majed Owenah, dated March 8, 2013, in the amount of $500,000.00. The claim arises from alleged injuries your client suffered from a slip and fall on January 13, 2012, at the U.S. District Courthouse in Chicago, Illinois. In consultation with GSA, your client's claim was referred to this office for response, pursuant to 28 C.F.R. § 14.2(b)(1).

The applicable provisions of the Federal Tort Claims Act (FTCA) [28 U.S.C. §§ 1346(b), 2401(b), 2671, et seq.] provide for the payment of claims which arise from the negligent or wrongful acts or omissions of an employee of the Federal Government while acting within the scope of his or her employment.

Our review of the circumstances surrounding your client's alleged injuries disclosed no evidence of negligence or wrongful acts on the part of U.S. Marshals Service (USMS) personnel. Moreover, to the extent your allegations involved your client's interactions with the Court Security Officer (CSO) on duty, a CSO is an independent contractor and not an employee of a federal agency within the meaning of the FTCA. The USMS is not legally responsible for contractor employees, whose physical performance is not subject to governmental supervision. See Logue v. United States, 412 U.S. 521 (1973).

Accordingly, your client's administrative tort claim against the United States, in the amount of $500,000.00, is denied. If Mr. Owenah is dissatisfied with our determination on his claims, he may file suit in the appropriate United States District Court not later than six months after the mailing of this amended notice of final denial.

Sincerely,

Gerald M. Auerbach
General Counsel

cc:  Joel David Malkin
     Assistant Regional Counsel
     General Services Administration
     Great Lakes Region
     230 S. Dearborn St.; Suite 3786
     Chicago, IL 60604